IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ELVA J. POWELL,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:13-cv-01106-TC |

Elva Powell seeks judicial review of the decision of the Commissioner of Social Security denying Ms. Powell's application for supplemental security income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383f. After careful review of the record and for the reasons discussed below, the court finds that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

## BACKGROUND

**I.   Procedural History**

On June 29, 2011, Ms. Powell filed an application for SSI benefits. Ms. Powell's application was denied initially and on reconsideration. Ms. Powell requested a hearing, and a video hearing was held June 3, 2013, before Administrative Law Judge Deborah J. Van Vleck. In a decision dated June 14, 2013, Judge Van Vleck concluded that Ms. Powell was not disabled. After the Appeals Council denied review,[1] Ms. Powell filed this appeal.

---

[1] With the denial by the Appeals Council, Judge Van Vleck's decision became the Commissioner's final decision subject to judicial review. 20 C.F.R. § 416.1481.

## II.     Factual Background

Ms. Powell was fifty-nine years old at the time of Judge Van Vleck's decision in this case. Ms. Powell completed high school and attended beauty school, although she does not have an active cosmetology license. (R. at 65-66.)[2] Her most recent work was in 2012 and 2013, when she worked as a part-time dishwasher at Utah Jazz games. (R. at 63-64.) The last time Ms. Powell had consistent work was from 1992 to 1996. (R. at 66.) She has reported little to no income since 1998. (R. at 215-21.) From 1998 to 2012, Ms. Powell's ex-boyfriend supported her. (R. at 67.) At the time of the SSI hearing, Ms. Powell continued to live with her ex-boyfriend in his trailer; he allowed Ms. Powell to live there rent-free, and in exchange she cleaned the trailer, cooked meals, and did other housework. (R. at 58-60, 97.) Based on this history, Judge Van Vleck found that Ms. Powell had no past relevant work. (R. at 72.)

In her SSI application, Ms. Powell indicated that she had been disabled since January 1, 2006, due to depression, "possible COPD," joint and muscle pain, and insomnia. (R. at 238.) Ms. Powell later added the following conditions: sleep apnea, overactive bladder, acid reflux, heel spurs, knee pain, and back pain. (R. at 272.) In addition, Ms. Powell testified at her hearing about additional problems with bunions, hammer toe, and calf spasms. (R. at 72-75.)

### A.     Medical Evidence

From 2011 through 2013, Ms. Powell saw numerous medical providers for her knee and back pain, which are the relevant medically severe impairments identified by Judge Van Vleck.[3]

---

[2] All citations to the record refer to the Administrative Record received from the Social Security Administration (Dkt. No. 8).

[3] As explained below, Judge Van Vleck concluded that Ms. Powell's only medically severe impairments were knee pain, back pain, and depression. (R. at 37.) Ms. Powell has not

2

Ms. Powell first reported knee pain on February 23, 2011, at an appointment with Dr. Susan Cochella at Sugarhouse Family Practice.[4] (R. at 333.)  Ms. Powell explained that, for three months, she had been having leg pain from her hips to her ankles, including in her knees. (R. at 334.)  Dr. Cochella examined Ms. Powell, noted a normal range of motion in Ms. Powell's right knee and functional range of motion in her extremities, and diagnosed Ms. Powell with soft tissue pain and iliotibial band syndrome. (R. at 335-36.)  Dr. Cochella referred Ms. Powell to physical therapy[5] and taught Ms. Powell stretches she could do at home. (R. at 336.)

After filing her SSI application, Ms. Powell saw the state's consultative examiner, Dr. Richard Ingebretsen, on September 29, 2011. Dr. Ingebretsen observed that Ms. Powell walked normally, sat down easily, moved freely, and leaned over easily while seated. (R. at 361.) Ms. Powell explained that she had chronic lower back pain, which seemed to worsen with moving, lifting, and bending. (Id.)  Ms. Powell also reported minor pain when she stooped and walked up and down stairs. (Id.) When describing her overall function, Ms. Powell told Dr. Ingebretsen that she "loves to dance and does this often even though she can't do the high kick anymore."[6] (R. at

---

challenged this finding and has not argued that her other symptoms should have been considered medically severe impairments. As a result, the court will not discuss the evidence related to Ms. Powell's other alleged limitations, including COPD, insomnia, sleep apnea, overactive bladder, acid reflux, heel spurs, bunions, hammer toe, and calf spasms. Moreover, because Ms. Powell's arguments on appeal relate solely to her physical limitations, the court will not discuss the evidence related to Ms. Powell's mental limitations, including her depression.

[4] Ms. Powell's primary care physician, Dr. Kirsten Stoesser, also practices at Sugarhouse Family Practice. (R. at 305.)

[5] Ms. Powell's medical record reflects one physical therapy session on September 30, 2011. (R. at 381-88.)

[6] At a September 14, 2011, appointment with her psychologist, Dr. Robert Strachan, Ms. Powell similarly explained that she "loves to dance when she is working around the house." (R.

362.) Ms. Powell stated that she "spends her days cleaning her house, cooking, making her bed and doing laundry."[7] (Id.) Every day, she walks to the store, which is at least three to four blocks from her home. (Id.) Ms. Powell believed she could lift fifteen pounds without difficulty and sit for twenty minutes. (Id.) During Dr. Ingebretsen's physical examination, Ms. Powell walked normally, had full strength, and had full range of motion with only minor knee and back pain. (R. at 362-64.)

X-rays of Ms. Powell's knees showed "some irregularity of the articular surface of the patella" in Ms. Powell's right knee, but her knees were otherwise normal. (R. at 374.) The impression for Ms. Powell's lumbar spine was "[m]ild levoscoliosis" with "no findings of acute abnormality." (R. at 375.)

In November 2011, Dr. David Peterson reviewed Ms. Powell's records as part of her SSI application. (R. at 112.) Based on his review, Dr. Peterson concluded, "There does not appear to be a severe physical impairment." (Id.) Accordingly, Ms. Powell was deemed not disabled. (R. at 117.) On reconsideration in February 2012, Dr. Susanne Thorbe performed a second review of Ms. Powell's records and agreed with Dr. Peterson's assessment. (R. at 125-26.)

On January 31, 2012, Ms. Powell met with her primary care physician, Dr. Stoesser, for knee pain. (R. at 481-87.) Dr. Stoesser recommended that Ms. Powell continue to take her previously prescribed medication for the pain. (R. at 485.) In an August 2012 visit with Dr.

---

at 352.) And in April and May 2012, Ms. Powell told her therapist that she was going to bars where men would pay her to dance. (R. at 501, 502.)

[7] During an appointment on October 19, 2011, Ms. Powell provided a similar report of her daily activities to Dr. Kathy Barnett, with Ms. Powell explaining that her "typical day" included cleaning the house, cooking meals, going to the store, doing laundry, sweeping, and mopping. (R. at 390.)

Stoesser, Ms. Powell complained that she had had knee pain for two months and had fallen approximately twenty times in the previous six months. (R. at 441.) Dr. Stoesser did not see any abnormality and noted full range of motion and full strength. (R. at 442.)

About a month later, Ms. Powell went to an urgent care facility with "bilateral leg swelling and pain." (R. at 433.) The urgent care doctor diagnosed mild edema. (R. at 434.)

In January 2013, Ms. Powell reported that all of her symptoms were "well controlled with medications." (R. at 573.)

Ms. Powell saw Dr. Stoesser again on February 1, 2013, and asked Dr. Stoesser to "fill out [the] paper for SSI." (R. at 586.) At the time, Ms. Powell was washing dishes at Utah Jazz games, working shifts of up to five hours, two to three times per week. (Id.) Dr. Stoesser summarized Ms. Powell's own statements as follows:

> States has a hard time lifting heavy objects more than 10 lbs, arms get tired, can push on a cart ok, is ok with occasionally climbing stairs, feels off balance if on ladder. Stooping down hurts her back, she does not feel that she could kneel, crouch, or crawl at work due to her knee pain.

(Id.) Dr. Stoesser completed the paperwork for Ms. Powell's application, recommending that Ms. Powell be limited to lifting no more than ten pounds, standing no more than two hours, and sitting no more than six hours. (R. at 619.) Dr. Stoesser also provided handwritten notes on the SSI form explaining that Ms. Powell "currently stand[s] 5 hours, up to 2 to 3 times per week," she "[g]ets low back pain and foot and knee pain with prolonged standing over five hours," and her "[a]rms hurt with heavy lifting." (Id.) But at the same visit, Dr. Stoesser performed a physical exam and observed that, while Ms. Powell had mild tenderness in certain areas, she had a normal gait, normal range of motion, and full strength in her upper and lower extremities. (R. at 588.)

On March 12, 2013, Ms. Powell saw Dr. Stoesser for a thumb injury and said she had no lower extremity pain. (R. at 598.) At this time, Ms. Powell continued to work at Utah Jazz games where she stood for eight hours. (Id.) Ms. Powell reported that her lower back hurt when she bent over while working. (Id.) This was Ms. Powell's last recorded visit before her June 3, 2013, SSI hearing.

### B.     Testimonial Evidence

The court has reviewed the transcript of Ms. Powell's hearing and finds that Judge Van Vleck accurately summarized Ms. Powell's testimony in her decision. (R. at 42.)

Ms. Powell testified that her symptoms include muscle spasms in her calves, foot pain, frequent falling, knee pain that increased with prolonged standing or walking, and back pain that increased when she sweeps or does dishes. (R. at 42.) As a result of these symptoms, Ms. Powell testified that she can only walk a couple of blocks, stand for twenty minutes at a time, sit for five to ten minutes at a time, and lift ten pounds. (R. at 77-79.) Ms. Powell bathes and dresses herself, goes grocery shopping, washes dishes, prepares meals, does laundry, changes linens, takes out the garbage if not too heavy, does "[a] little bit" of yard work, and performs other household chores, although she testified that sweeping and mopping hurt her lower back. (R. at 79-82.)

When asked about her dishwashing work at Utah Jazz games and whether she had trouble lifting dishes, she replied, "Not too bad, it would hurt me bending down in the dish pan and it did bother me lifting them, you know, because there's thousands of them --." (R. at 88.) Ms. Powell confirmed that she had worked two or three nights each week, working five- or six-hour shifts. (R. at 89, 91.) Ms. Powell experienced back pain during her shift, which started about thirty minutes into her shift. (R. at 92.)

6

After Ms. Powell's testimony, Judge Van Vleck questioned the vocational expert, Kourtney Layton. Judge Van Vleck asked Ms. Layton the following question:

> I'd like you to assume a hypothetical individual the claimant's age, which today is 59, education high school, and no past relevant work; I'd further like you to assume this individual of [sic] has the following residual functional capacity: this individual is limited to medium work; however the individual has some non-exertional limitations, this individual can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; this individual has mental limitations, from the state agency assessment this individual would be limited to perform simple, routine, competitive [sic] tasks; can use judgment to deal with changes in a work setting consistent with that type of work; and no more than occasional interaction with the general public; based upon that residual functional capacity are there occupations at the medium level this individual could perform?

(R. at 100-01.) Ms. Taylor responded that a hypothetical person as described by Judge Van Vleck could be a kitchen helper, team assembler, or dietary aide. (R. at 101.) And there are thousands of positions available in the national economy for each of these jobs. (Id.)

Judge Van Vleck issued a written decision on June 14, 2013, concluding that Ms. Powell was not disabled. (R. at 32-52.)

    **C.**    **Additional Evidence Submitted to Appeals Council**

On August 7, 2013, the WorkAbility Centers completed a Functional Capacity Evaluation (FCE) for Ms. Powell. (R. at 8-30.) The FCE indicates that Ms. Powell could perform work at the sedentary level. (R. at 16-17.) Ms. Powell, through her attorney, submitted the FCE to the Appeals Council as additional evidence for its review. (R. at 6.) On October 11, 2013, the Appeals Council made the FCE part of the record but denied review because it "found no reason under [its] rules to review the Administrative Law Judge's decision." (R. at 1, 5.)

# ANALYSIS

### I.   Standard of Review

The court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations omitted). Substantial evidence "requires more than a scintilla but less than a preponderance." Id.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotations omitted). The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's . . . [and] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. (internal quotations omitted).

### II.   Applicable Law

A person seeking Social Security benefits bears the burden of proving a disability. Miller v. Chater, 99 F.3d 972, 975 (10th Cir. 1996); see also 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are . . . disabled."). Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Act further provides that an individual shall be determined to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Once the claimant demonstrates a disability, the burden shifts to the Commissioner "to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy." Miller, 99 F.3d at 975. The Social Security Administration uses a "five-step framework . . . to determine whether these conditions are met." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

Id. (citations and internal quotations omitted).

### III.    Judge Van Vleck's Decision

At step one of the sequential analysis, Judge Van Vleck found that Ms. Powell had not engaged in substantial gainful activity since she filed her application on June 29, 2011. Although Ms. Powell worked as a part-time dishwasher in late 2012 and early 2013, "this work activity did not rise to the level of substantial gainful activity." (R. at 37.)

Judge Van Vleck identified the following severe impairments at step two: "(1) Mild degenerative changes of the bilateral knees; (2) Mild degenerative changes of the spine; and (3)

A mental impairment variously diagnosed to include situational depressed moods, borderline intellectual functioning, alcohol dependence." (Id.) Judge Van Vleck found references in the record to other medically determinable impairments, such as bunions, hammer toe, asthma, sleep apnea, gastroesophageal reflux disease (GERD), and urinary incontinence. But Judge Van Vleck determined that "the medical evidence does not reflect that these impairments cause more than minimal limitation in [Ms. Powell's] ability to perform basic work activities." (Id.)

At step three, Judge Van Vleck analyzed each of Ms. Powell's medically severe impairments and concluded that Ms. Powell's impairments do not meet the listing requirements in the relevant regulations. (R. at 39-41.)

Proceeding to step four, Judge Van Vleck found that Ms. Powell had the residual functional capacity to perform medium work but with the following restrictions:

> [T]he claimant should no more than occasionally climb ramps and stairs, but should never climb ladders, ropes, and scaffolds; the claimant should no more than frequently balance, stoop, kneel, crouch and crawl; the claimant is limited to perform simple, routine and repetitive tasks; the claimant is limited to judgment decisions and work place changes that are consistent with simple, routine and repetitive work; and the claimant should no more than occasionally interact with the general public.

(R. at 41.)

Considering this RFC, along with Ms. Powell's age, education, and work experience, Judge Van Vleck analyzed whether Ms. Powell could perform jobs that exist in the national economy.[8] Judge Van Vleck noted that Ms. Powell's ability to perform all or substantially all of the requirements of medium work was limited by the additional restrictions listed in Ms.

---

[8] Judge Van Vleck found that Ms. Powell did not have past relevant work to which she could return, which left the question of whether any work existed in the national economy that Ms. Powell could perform. (R. at 45.)

Powell's RFC. But even with Ms. Powell's specific limitations, the vocational expert testified that a hypothetical person with Ms. Powell's age, education, work experience, and RFC could work as a kitchen helper, team assembler, or dietary aide. Based on this testimony, Judge Van Vleck concluded that Ms. Powell "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate . . . ." (R. at 46.)

### III. Judge Van Vleck's Decision is Supported by Substantial Evidence.

While Ms. Powell does not contest Judge Van Vleck's findings at steps one through three, Ms. Powell challenges three aspects of Judge Van Vleck's decision at steps four and five. At step four, Ms. Powell argues that Judge Van Vleck erred in two ways in determining Ms. Powell's RFC: (1) by failing to perform a function-by-function analysis that specifically addressed Ms. Powell's lifting ability, and (2) by giving "little weight" to the SSI form completed by Dr. Stoesser. (R. at 44.) In response to Judge Van Vleck's conclusions at step five, Ms. Powell contends that Judge Van Vleck presented incomplete hypotheticals to the vocational expert.

Ms. Powell also maintains that the Appeals Council should have reversed Judge Van Vleck's decision based on the above errors and based on the additional evidence from the FCE performed on August 7, 2013.

#### A. Residual Functional Capacity

A claimant's residual functional capacity is defined as the most he or she can do despite limitations. 20 C.F.R. § 416.945(a)(1). In determining a claimant's RFC, "an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical

11

opinions in the file." Wells v. Colvin, 727 F.3d 1061, 1071 (10th Cir. 2013); see also 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

### i.      Function-by-function analysis

Ms. Powell first asserts that Judge Van Vleck failed to perform a function-by-function analysis in determining Ms. Powell's residual functional capacity. In particular, Ms. Powell argues that Judge Van Vleck did not discuss Ms. Powell's ability to meet the lifting requirements for medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). The Commissioner counters that Judge Van Vleck considered all of Ms. Powell's conditions and determined that Ms. Powell could perform medium work with additional limitations.

Ms. Powell relies on Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (1996), which reads:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1.

The Tenth Circuit recently applied SSR 96-8p and concluded that the claimant had not demonstrated error even though the ALJ failed to explicitly find that the claimant could meet the sitting requirements for sedentary work. Hendron v. Colvin, 767 F.3d 951, 957 (10th Cir. 2014). In Hendron, the ALJ found that the claimant had the RFC to perform a full range of sedentary work. Id. at 956. The claimant contended that the RFC was "not in the proper form" because

"the ALJ was required to separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull." Id. While sedentary work generally involves about six hours of sitting, the claimant had presented evidence that she could sit for only one half hour at a time. Id. at 957. The claimant therefore "assert[ed] that, in assessing her RFC without an explicit function-by-function analysis, the ALJ overlooked her problems with sitting." Id. at 956.

The court disagreed, reasoning that the ALJ considered the claimant's evidence but decided that the evidence did not support the claimant's alleged limitation. Id. at 957. Concluding that "the ALJ's failure to find explicitly that [the claimant] was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome of the case," the court held that the claimant had not demonstrated error. Id.

As in Hendron, Judge Van Vleck did not overlook Ms. Powell's claim that she could not lift over ten pounds. While Ms. Powell testified about her alleged lifting abilities and provided some evidence in support, Judge Van Vleck found Ms. Powell's claims less than credible, based on both the objective medical evidence and on Ms. Powell's daily activities. Because there is substantial evidence to support Judge Van Vleck's credibility determination, the court will defer to her findings. See Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.").

First, Judge Van Vleck reasonably found that "[t]he medical record does not support [Ms. Powell's] allegations of severe functional limitations." (R. at 42.) As Judge Van Vleck noted, Ms. Powell's September 2011 x-rays showed mild levoscolios and a mildly abnormal right knee image, but the radiology studies were otherwise normal. (R. at 374-75.) Judge Van Vleck further

considered medical records reflecting Ms. Powell's complaints of minor back, hip, and knee pain. (R. at 42.) But Judge Van Vleck relied on other records from the time of Ms. Powell's first visit for knee pain, in which her medical providers consistently reported that physical examinations showed that Ms. Powell had a normal gait, normal range of motion, and full strength. (R. at 335-36, 382, 442, 588.) Consultative examiner Dr. Ingebretsen similarly observed that Ms. Powell walked normally, had full strength, and had full range of motion with only minor knee and back pain. (R. at 362-64.)

To counter these records, Ms. Powell relies on the SSI form completed by her primary care physician, Dr. Stoesser, in which Dr. Stoesser marked the box indicating that Ms. Powell could lift no more than ten pounds. But during this same visit, Dr. Stoesser performed a physical examination which demonstrated Ms. Powell's normal gait, normal range of motion, and full strength. (R. at 588.) While Ms. Powell testified that she could lift no more than ten pounds, there is no objective evidence in the record that supports such a lifting restriction.

In addition, Judge Van Vleck appropriately considered Ms. Powell's daily activities in judging Ms. Powell's credibility. See Wilson v. Astrue, 602 F.3d 1136, 1146 (10th Cir. 2010) (although claimant testified that she had severe neck and back pain, her description of her daily activities showed "she was able to drive, shop, and handle finances; that gardening was a hobby; and that she visited friends and ate out"); 20 C.F.R. § 416.929(c)(3)(i) (an ALJ will consider daily activities). During visits with various providers, Ms. Powell explained that she loves to dance (R. at 352, 362, 501, 502), she walks three to four blocks to the store every day (R. at 362), and she spends her days cleaning, cooking, and doing laundry (R. at 362, 390). At the hearing before Judge Van Vleck, Ms. Powell testified that she bathes and dresses herself, goes grocery

shopping, washes dishes, prepares meals, does laundry, changes linens, takes out the garbage, does some yard work, and performs other household chores. (R. at 79-82.) In addition, just a few months before the hearing and after she filed her SSI application, Ms. Powell was employed as a part-time dishwasher at Utah Jazz games where she worked a few days each week, standing and washing dishes for up to eight hours at a time. (R. at 598, 619.) Judge Van Vleck concluded that Ms. Powell's "ability to do such activities suggests that she is not as limited as one would expect given her complaints of disabling symptoms and limitations." (R. at 44.)

After providing a thorough summary of Ms. Powell's daily activities and the objective medical evidence, Judge Van Vleck reasonably concluded that Ms. Powell had the residual functional capacity to perform medium work but with restrictions related to climbing, balancing, stooping, kneeling, crouching, and crawling. (R. at 41.) Judge Van Vleck also stated that Ms. Powell should be limited to simple, routine, and repetitive work, where she would have limited contact with the general public. (Id.) This determination was supported by substantial evidence. But cf. Hamlin v. Barnhart, 365 F.3d 1208, 1221-22 (10th Cir. 2004) (medium-work designation was not supported by substantial evidence where "[t]he ALJ examined [the claimant's] significantly reduced activities of daily living, noting he performed no house or yard work and drove infrequently" and where multiple doctors' findings that the claimant had "diminished reflex and bilateral grip, and bilateral arm muscle weakness and grasp strength").

And Judge Van Vleck followed the necessary steps to reach her RFC decision. She provided "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7; see also Jimison ex rel. Sims v. Colvin, 513

Fed App'x 789, 796 (10th Cir. 2013) (ALJ's credibility determination was sufficient where "[h]e summarized [the claimant's] testimony about her symptoms and then discussed the medical evidence, explaining how it undermined [the claimant's] credibility regarding her limitations").

For these reasons, the court finds that Judge Van Vleck's RFC determination fully complies with SSR 96-8p and is supported by substantial evidence.

### ii.     Treating provider opinions

Ms. Powell also challenges Judge Van Vleck's decision to discount the SSI form signed by Ms. Powell's treating physician, Dr. Stoesser. In deciding how much weight to give the opinions of various providers, "[a]n ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).  Even if not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 416.927." Social Security Ruling 96-2p, 1996 WL 374188, at *4 (1996). Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Drapeau, 255 F.3d at 1213 (internal quotations omitted).

An ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  Indeed, "the Commissioner has recogized, '[n]ot every factor for weighing opinion

evidence will apply in every case.'" Id. (quoting Social Security Ruling 06-03p, 2006 WL 2329939 (2006)). As long as the ALJ provides "good reasons" for the weight given to treating sources' opinions, "[n]othing more [is] required." Id.

Here, Judge Van Vleck determined that Dr. Stoesser's opinion, as provided in the SSI form she completed on February 1 2013, was entitled to "little weight." (R. at 44.) Although Judge Van Vleck did not explicitly address each of the above factors, she provided two good reasons for her decision.

First, the SSI form was inconsistent with Dr. Stoesser's own clinical findings. When Dr. Stoesser completed Ms. Powell's SSI form, she marked certain boxes indicating that Ms. Powell should lift no more than ten pounds, stand no more than two hours, and sit no more than six hours. (R. at 619.) But after a physical examination performed during the same visit, Dr. Stoesser observed that Ms. Powell had a normal gait, normal range of motion, and full strength in both her upper and lower extremities. (R. at 588.) Even though the SSI form was completed by Dr. Stoesser as Ms. Powell's treating physician, Dr. Stoesser did not explain the discrepancy between her choices on the form and her contemporaneous findings. This inconsistency was sufficient reason to reject Dr. Stoesser's opinions. See White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2002) (affirming ALJ's rejection of a treating physician's opinion where there was a "discrepancy between [the physician's] very restrictive functional assessment and her contemporaneous examination").

Moreover, the form conflicted with Dr. Stoesser's previous examinations of Ms. Powell, which consistently showed that Ms. Powell had full strength, and any pain she had was controlled with prescribed medications. (R. at 442, 485, 573.) With no resolution of the

inconsistencies between Dr. Stoesser's exam notes and the SSI form, Judge Van Vleck appropriately found that Dr. Stoesser's opinion was not well supported. See <u>DeFalco-Miller v. Colvin</u>, 520 Fed. App'x 741, 746 (10th Cir. 2013) (affirming ALJ's decision to give little weight to treating physician's opinions where physician's recommended limitations were inconsistent with his own treatment notes and course of treatment); <u>Wells</u>, 727 F.3d at 1072 ("Inconsistency with the record as a whole . . . is in general a legitimate basis on which to discount or reject a medical opinion.").

Judge Van Vleck also declined to defer to the SSI form because "Dr. Stoesser filled in the limitations based on [Ms. Powell's] subjective responses to the questionnaire." (R. at 44.) As explained above, Judge Van Vleck concluded that Ms. Powell did not provide credible statements about her alleged limitations. Because the SSI form merely restated Ms. Powell's subjective statements about her functional abilities, and because Ms. Powell's statements were "belied by her reported daily activities, her post onset work and the objective findings in Dr. Stoesser's treatment records" (R. at 44), Judge Van Vleck reasonably discounted Dr. Stoesser's opinions. See <u>White</u>, 287 F.3d 907-08 (ALJ reasonably discounted treating physician's opinion which was based on the claimant's subjective assertions rather than objective medical evidence).

  **B.**  **Vocational Expert**

Ms. Powell's final challenge at step five relates to Judge Van Vleck's questioning of the vocational expert, Kourtney Layton. Ms. Powell contends that Judge Van Vleck erred because her hypothetical questions were premised on a person limited to medium work. But the court has already concluded that Judge Van Vleck appropriately assessed Ms. Powell's RFC, which limited Ms. Powell to restricted medium work. Judge Van Vleck asked about a hypothetical person

limited to medium work and then explained the significant restrictions that related to Ms. Powell's specific conditions. Judge Van Vleck also asked the vocational expert to consider Ms. Powell's age, education, and lack of work experience. (R. at 100-01.) After reviewing the totality of the record, including the transcript of Ms. Powell's hearing, the court finds that Judge Van Vleck did not err in her questioning of the vocational expert. Judge Van Vleck covered all of the necessary areas of inquiry and provided a complete picture of Ms. Powell's demonstrable limitations. Cf. Sitsler v. Astrue, 401 Fed. App'x 112, 120 (10th Cir. 2011) (remanding in part because ALJ did not present a hypothetical to vocational expert that included claimant's age, education, or work experience and similarly did not include the limitations the ALJ identified in the claimant's RFC).

### C. Additional Evidence Submitted to Appeals Council

Finally, Ms. Powell argues that she submitted additional evidence to the appeals council that demonstrates her disability. "[A]ny new evidence submitted to the Appeals Council on review 'becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence.'" Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006) (quoting O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)). But "[i]f new and material evidence is submitted the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).

> The basic principle, derived from the relevant regulations, is well-established: the Appeals Council must consider additional evidence offered on administrative review—after which it becomes part of [the court's record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the

<u>ALJ's decision</u>. If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review.

<u>Krauser v. Astrue</u>, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing <u>Chambers v. Barnhart</u>, 389 F.3d 1139, 1142 (10th Cir. 2004)) (emphasis added).

Judge Van Vleck issued her written decision on June 14, 2013. On August 7, 2013, Ms. Powell went to the WorkAbility Centers and obtained a Functional Capacity Evaluation (FCE). Although Ms. Powell submitted the FCE as additional evidence for the Appeals Council to consider, an evaluation performed nearly two months later cannot provide evidence that "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). As such, the FCE plays no role in this court's review.[9]

## **CONCLUSION**

For the reasons stated above, the court finds that the Commissioner's decision in this case is supported by substantial evidence and is therefore AFFIRMED.

DATED this 1st day of December, 2014.

BY THE COURT:

*/s/ Tena Campbell*

_____

TENA CAMPBELL
United States District Judge

---

[9] In her reply, Ms. Powell does not counter the authority cited by the agency for this position. Presumably Ms. Powell concedes that the Appeals Council was not required to review the additional evidence. Even if Ms. Powell does not concede as much, the parties have not identified any authority that would allow the Appeals Council or this court to review evidence of an examination that occurred after Judge Van Vleck rendered her decision.